IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**BERTHETTA HATCH**                                                                                                 **PLAINTIFF**

**V.**                                              **CASE NO. 3:11-CV064-M-A**

**VANGUARD OF RIPLEY, LLC, d/b/a**
**REST HAVEN HEALTH AND REHABILITATION**                      **DEFENDANTS**

**MEMORANDUM OPINION**

This cause comes before the court on motion of defendant Vanguard of Ripley, LLC, doing business as Rest Haven Health and Rehabilitation ("Rest Haven") for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Berthetta Hatch opposes summary judgment. The court, having considered the submissions of the parties, concludes that the motion is denied with regard to plaintiff's Title VII claim and granted with regard to plaintiff's Fair Labor Standards Act anti-retaliation claim.

Rest Haven is a nursing home facility in Ripley, Mississippi that provides residential, medical, and rehabilitation services to its elderly residents. Rest Haven houses thirty-nine residents and employs fifty staff including a variety of nursing positions. In March 2007, Rest Haven hired Berthetta Hatch as a full time charge nurse (CN). As such, Ms. Hatch was assigned to and responsible for the residents living in one of two wings in the facility. Ms. Hatch was responsible for monitoring the residents, checking vital signs, administering medication, and contacting a physician if problems arose.

In spring 2010, Rest Haven changed its staffing structure to a model by which four Registered Nurse (RN) Team Leaders were hired under a rotating schedule in place of the prior CN model. One RN Team Leader is responsible for all residents in both wings of the facility

during one shift, as opposed to just one wing under the CN model. A CN was paid hourly and an RN Team Leader is a salaried position. Ms. Hatch was concerned that this difference was unfair and would deprive her of holiday pay, shift premiums, and paid time off (PTO). She voiced her concerns to the Assistant Director of Nursing and others. Two other RN Team Leaders, Marlene Cissom and Susann Johnson, voiced similar complaints.

On September 7, 2010, the Director of Nursing, Nellie Weeks, met with Ms. Hatch to discuss the future of her employment with the company. Rest Haven terminated her employment based on four Personnel Action Forms, or "write-ups". Ms. Weeks informed Hatch that Rest Haven's decision rested mainly on the most recent write-up which Hatch had previously signed. Ms. Weeks gave Hatch an option to resign by which she would be allowed to accrue paid time off (PTO) hours for two weeks. Otherwise, she would be terminated immediately. Hatch refused to resign. In July 2010, Rest Haven gave a nearly identical option to Marsha Vick, a white employee. Ms. Vick elected to resign, and Rest Haven allowed her to accrue PTO hours for two more weeks.

Hatch's first write-up was based on an incident in July 2010 in which Ms. Hatch did not report the fractured thumb of a resident to that resident's family members or responsible party. Ms. Hatch admitted in her deposition that these circumstances warranted a write-up. Her main objection to the write-up is that it was not brought to her attention until she was fired. The second incident occurred when Ms. Hatch was directed to obtain urinalyses from more than one patient. She alleges that her failure to do so is because she neither had the supplies, nor did she have a key to storage for extra supplies. Ms. Hatch alleges that it is not her responsibility to ensure that supplies are available and that no write-up was warranted for this incident. The third

2

write-up occurred because a patient fell who was known to be susceptible to falls from a hip fracture. Ms. Hatch noted the fall in the patient's chart but did not initially file an incident report because she did not witness the fall. Ms. Hatch later wrote an incident report when the Director of Nursing asked her to do so. Ms. Hatch concedes that these circumstances were a sufficient basis for a write-up. The fourth and final write-up was filed due to Ms. Hatch's failure to change one resident's bed to a low bed with a bolster mattress. The resident fell out of her bed. Ms. Hatch admits that this task was her responsibility and that the resulting accident was a sufficient basis for a write-up. Ms. Hatch never suspected that race was an issue in her employment until she was terminated.

Rest Haven has an employee handbook that includes a progressive discipline system whereby the company provides written and oral warnings. The handbook expressly states that the progressive discipline provision is a guideline that does not have to be obeyed. The handbook further states that "Any of the disciplinary actions... including termination, may be initiated at any stage..." The handbook includes an acknowledgement form which states that the employment relationship is at will. Hatch signed the acknowledgement form in March 2007.

On December 22, 2010, Hatch filed a charge with the Equal Opportunity Commission ("EEOC") against Rest Haven for race discrimination. On February 25, 2011, the EEOC closed Ms. Hatch's file because, based on its investigation, it was unable to conclude that the information obtained established a statutory violation. On May 18, 2011, Ms. Hatch filed suit against Rest Haven in this court. Hatch asserts that the defendant unlawfully discriminated against her based on race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and that the defendant retaliated against her in violation of the Fair Labor Standards Act

(FLSA). She seeks actual and punitive damages. This court has subject matter jurisdiction over the complaint based on a federal question, 28 U.S.C. § 1331.

Defendant Rest Haven filed the instant motion for summary judgment, conceding that Hatch established a prima facie case of race discrimination. Rest Haven argues that plaintiff was terminated for legitimate, nondiscriminatory reasons that included the four write-ups and other oral, undocumented reasons. Having articulated an allegedly non-discriminatory reason, Rest Haven asserts that Hatch is unable to demonstrate pretext. With regard to plaintiff's FLSA claim, Rest Haven argues that Ms. Hatch did not engage in activity protected under FLSA and that no causality exists between any such alleged activity and her termination.

Hatch opposes summary judgment, arguing that Rest Haven's alleged nondiscriminatory reason for her termination was pretext or, alternatively, that race was a motivating factor. She further maintains that the concerns she shared with the company regarding the new RN Team Leader position constituted an informal complaint such that FLSA protects her from any resulting adverse employment action by the company. She maintains that her past disciplinary record, Rest Haven's failure to follow its handbook, and the temporal relationship between her voiced concerns and adverse employment action are evidence sufficient to establish a prima facie case of retaliation under FLSA. In her motion opposing summary judgment, Hatch withdrew her claims of breach of contract and Title VII retaliation.

Summary judgment is proper when the evidence shows that there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Coury v. Moss,* 529 F.3d 579, 584 (5th Cir. 2008). When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and

"refrain from making credibility determinations or weighing the evidence." *Id*. (quoting *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007)). Once the moving party meets its burden, the nonmoving party must "come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist*., 635 F.3d 685, 690 (5th Cir. 2011). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but rather must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

In order to survive summary judgment on a claim of employment discrimination based on circumstantial evidence, the plaintiff must first establish a prima facie case of intentional discrimination. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 142 (2000)). Both parties to this action concede that Hatch has established a prima facie case.

Once the plaintiff makes her initial showing of discrimination, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The employer's burden is satisfied if he "simply 'explains what he has done' or ' produces evidence of legitimate nondiscriminatory reasons.'" *Board of Trustees of Keene State College v. Sweeney* 439 U.S. 24, 25 (1978).

Rest Haven's articulated reasons for terminating Hatch include her write-ups and "deficient work performance as an RN Team Leader." Rest Haven provided Hatch with a termination report documenting her "unsatisfactory performance". The report stated: "Staff

5

member unable to meet the performance criteria standards as a night duty RN Team Leader. The skill sets for this role have not been met." The document also includes a statement that Hatch is "eligible for rehire as a [*sic*] RN in a [c]apacity worthy of experience at this time. May develop management skills at a future date [*sic*] they may be of value in an RN Team model role." By producing the foregoing evidence of non-discriminatory justifications as required by *Sweeney*, Rest Haven has met its burden.

Rest Haven having satisfied its burden, the plaintiff must now "offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed motive alternative). *Rachid v. Jack In The Box, Inc.* 376 F.3d 305, 312 (5th. Cir. 2004). In certain instances, "the plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 135 (U.S. 2000).

Hatch points to the following evidence that, she argues, is circumstantial evidence of pretext and a mixed motive. First, Hatch maintains that a few of the write-ups in her file were not brought to her attention until her termination. Second, Rest Haven allowed Ms. Vick, a white employee, to work two more weeks following her resignation. She also points to her own testimony as well as that of Dr. Cappleman in which he states that "[Rest Haven] lied" about whether or not he was upset with Ms. Hatch. Marlene Cissom overheard Nellie Weeks say that "We was [*sic*] bringing Rebekah back no matter what it took." This remark applies to the white

6

RN that Rest Haven hired to fill the RN Team Leader rotation following Ms. Hatch's termination. Plaintiff alleges that Rest Haven failed to follow its own handbook. Last, she argues that Rest Haven replacing Hatch with a white employee is circumstantial evidence of pretext. The court is of the opinion that this evidence sufficiently poses an issue of material fact such that judgment as a matter of law would be improper at this stage.

Turning now to plaintiff's FLSA retaliation claim, the anti-retaliation provision of FLSA prohibits employers from retaliating against an employee who has "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter...." 29 U.S.C. § 215(a)(3). Having adopted the *McDonnell Douglas* framework for anti-retaliation claims, the plaintiff must first establish a prima facie case to survive summary judgment. *Hagan v. Echostar Satellite, L.L.C.* 529 F.3d 617, 624 (5th. Cir. 2008). Plaintiff must show participation in protected activity under FLSA, an adverse employment action, and a causal link between the activity and the adverse action. *Id*. The Fifth Circuit follows the majority rule that formal complaints are not required for a valid claim under FLSA. *Id*. at 626. Informal complaints may suffice only if the informal complaint concerns some violation of law. *Id*. "Abstract grumblings or vague expressions of discontent" are not generally actionable. *Id*.

Ms. Hatch complained about a change in nurse scheduling and duties. Her complaints to the company, construed in her favor, did not concern any violation of law. She maintains that at no time was she concerned about race being an issue with her employment until after she was terminated. Accordingly, her complaint amounts to an expression of discontent on which a valid FLSA anti-retaliation claim cannot survive. Therefore, the court does not reach the issue of whether adequate causation exists.

In light of the foregoing, the plaintiff has created a genuine issue of material fact under Title VII for intentional discrimination. Additionally, the plaintiff has not established a prima facie case for unlawful retaliation under FLSA. Judgment as a matter of law is hereby entered in favor of the defendant on the claims of anti-retaliation under FLSA, breach of contract, and retaliation under Title VII. Pursuant to Fed. R. Civ. P. 58, a separate judgment shall be entered this date.

SO ORDERED, this the 7th day of August, 2012

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**